UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LADELL R. THURSTON, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | CAUSE NO.: 2:20-CV-150-TLS |

**OPINION AND ORDER**

The Plaintiff Ladell Roy Thurston seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income. For the reasons set forth below, the Court finds that reversal and remand for further proceedings is required.

**PROCEDURAL BACKGROUND**

On July 27, 2017, the Plaintiff filed an application for supplemental security income, alleging disability beginning on August 14, 2013. AR 18, ECF No. 13. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on February 14, 2019. *Id*. On March 27, 2019, the ALJ issued a written decision, finding the Plaintiff not disabled. *Id.* at 18–28. The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. *Id.* at 1–4. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On April 14, 2020, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff's appeal is fully briefed. *See* ECF Nos. 17, 18, 23.

**THE ALJ'S DECISION**

For purposes of supplemental security income, a claimant is "disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since July 27, 2017, the application date. AR 20.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of lumbar degenerative disc disease with a disc bulge status post discectomy and major depressive disorder. AR 20.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 416.920(a)(4)(iii), (d). Here, the

2

ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. AR 21.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and have no exposure to unprotected heights or dangerous moving machinery. The claimant can further understand, remember, and carry out simple instructions; make simple work-related decisions; sustain an ordinary routine without special supervision, and can tolerate occasional changes in work setting.

AR 22.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 416.920(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is unable to perform any past relevant work. AR 26.

At step five, the ALJ considers whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform jobs in the national economy of final assembler, food and beverage order clerk, and toy stuffer. AR 27. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 416.912.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758

F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

The Plaintiff argues for reversal and remand on the bases that the ALJ created an evidentiary deficit after rejecting all medical opinions of record; did not consider the Plaintiff's need to lie down throughout the day; failed to properly account for the Plaintiff's inability to bend and stoop; erred in formulating an RFC to account for the Plaintiff's mental impairment in concentration, persistence, and pace; improperly assessed the medical opinions of record; and failed to properly consider the Plaintiff's subjective complaints. Having considered the arguments and evidence of record, the Court finds that remand is required for the ALJ to properly consider the medical evidence regarding the Plaintiff's inability to stoop and bend and the Plaintiff's moderate difficulties with concentration, persistence, and pace.

The residual functional capacity ("RFC") is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are

5

reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

First, remand is required for the ALJ to properly consider the medical evidence regarding the Plaintiff's inability to stoop. In August 2013, the Plaintiff suffered a workplace injury to his back. AR 390. After numerous steroid injections and physical therapy while awaiting approval for surgery, the Plaintiff underwent a partial discectomy and foraminotomy at L5-S1 on October 13, 2016, performed by his treating orthopedic surgeon, Dr. Fink. *See id.* at 322–34, 344, 349, 351–76, 400–08. In January 2017, the Plaintiff had a steroid injection and continued to seek medical treatment for his lower back pain through the end of 2018. *See id.* at 399, 428, 447, 461. A CT scan of the lumbar spine in August 2018 showed a mild bulging disc at the L4-5 level and a mild disc protrusion at L5-S1 centrally and to the right suggesting a mild herniated disc. *Id.* at 465–66, 508. An August 2018 lumbar spine MRI showed a 2mm posterior annular disc bulge at L5-S1 that indented the thecal sac. *Id.* at 467. In November 2018, an EMG nerve conduction study was normal. *Id.* at 484. The Plaintiff was advised to exercise regularly. *Id.* at 497–98.

On October 30, 2017, Dr. Villarroel performed a consultative examination at the request of the Disability Determination Bureau. *Id.* at 412–16. On musculoskeletal examination, Dr. Villarroel reported "spinous and paraspinal tenderness in the lumbar region with decreased range of motion." *Id.* at 413. On examination of the Plaintiff's gait, Dr. Villarroel noted that the Plaintiff had an antalgic gait without an assistive device, was not able to stoop and squat completely, was not able to walk heel to toe and tandemly, was able to get on and off the examination table with difficult but did not require any assistance, and was able to stand from a

sitting position with difficulty. *Id*. at 414. On the range of motion chart for the lumbar spine, Dr. Villarroel recorded forward flexion of 30 to 40 degrees (90 is normal), extension of 5 to 10 degrees (25 is normal), and lateral flexion of 10 to 15 degrees on both the right and left (25 is normal). *Id.* at 416. In his medical source statement, Dr. Villarroel opined that the Plaintiff is "unable to do work related activities such as sitting, standing, walking or lifting due to lower back pain but is able to do carrying and handling objects." *Id*. at 414.

In a January 31, 2018 chronic pain residual functional capacity questionnaire, the Plaintiff's treating surgeon, Dr. Fink, who had been treating the Plaintiff for four years, opined, among other limitations, that the Plaintiff can "never" twist, stoop (bend), crouch/squat, climb ladders, or climb stairs. *Id.* at 420. The question asked how often the patient can perform the activities with options of "never," "rarely," "occasionally," and "frequently." *Id*. The form explained: "In an average 8-hour working day, 'occasionally' means up to 1/3 of the working day and 'frequently' means between 1/3 and 2/3 of the working day." *Id.*

At step two of the sequential evaluation, the ALJ found that the Plaintiff has the severe physical impairment of lumbar degenerative disc disease with a disc bulge status post discectomy. *Id.* at 20. In the RFC, the ALJ found that the Plaintiff has the ability to perform the exertional requirements of sedentary work with certain postural limitations, including the ability to "occasionally" stoop. *Id.* at 22. In this administrative context, "occasionally" means "from very little up to one third" of an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Thus, despite Dr. Villarroel's examination findings and opinion and Dr. Fink's opinion, the ALJ nevertheless found that the Plaintiff can stoop up to a third of the workday.

The Plaintiff argues that the ALJ erred by failing to include a restriction of no stooping in the RFC and failed to create a logical bridge between the evidence and the RFC as to this

7

limitation. Indeed, a plain reading of Dr. Villarroel's examination record of limited lumbar flexion supports an inability to *ever* stoop or bend. *See* AR 413–16. Yet, the ALJ offers no discussion of these examination findings or an explanation for the apparent discrepancy between this medical evidence and the RFC. Nor does the ALJ identify any contrary evidence demonstrating an ability to fully bend or stoop.

      The Commissioner argues that the opinions of Dr. Villarroel and Dr. Fink are "contradicted by other evidence" but then cites only the opinions of the state agency reviewing physicians Dr. Whitley and Dr. Ruiz that the Plaintiff can occasionally stoop. Def.'s Br. 9, ECF No. 18 (citing AR 70, 82). However, Dr. Whitley and Dr. Ruiz did not examine the Plaintiff, and the ALJ offers no explanation for discounting Dr. Villarroel's objective examination findings. The Commissioner is correct that the ALJ generally discounted Dr. Villarroel's medical source statement that the Plaintiff "is unable to do work related activities such as sitting, standing, walking, or lifting due to lower back pain" as "based primarily on the [Plaintiff's] subjective complaint." AR 26. Yet, Dr. Villarroel's examination findings of limited lumbar flexion and an inability to stoop completely were objective observations on examination—not an opinion within the medical source statement based on subjective complaints. Thus, the ALJ's reason for discounting Dr. Villarroel's medical source statement does not appear applicable to Dr. Villarroel's examination findings. In addition, Dr. Fink's opinion on stooping appears consistent with Dr. Villarroel's objective examination findings. Although the ALJ found certain aspects of Dr. Fink's opinion not persuasive, the ALJ did not specifically address Dr. Fink's opinion as to the Plaintiff's inability to stoop, and, thus, did not discuss the consistency of Dr. Fink's opinion with Dr. Villarroel's examination findings.

In *Golembiewski v. Barnhart*, the Seventh Circuit found that the ALJ erred by failing to resolve an evidentiary conflict between examination findings that the claimant had only 40 degrees of flexion, 15 degrees of extension, and 10 degrees of tilting in the lower back and the administrative finding that the plaintiff could perform light work, which requires bending occasionally. 322 F.3d 912, 917 (7th Cir. 2003). Similarly, in *Thomas v. Colvin*, the Seventh Circuit found that the ALJ failed to resolve a conflict between a consultative physician's report showing that the claimant had only 50 degrees of flexion in her lower back and "was unable to squat" and an RFC for occasional stooping, kneeling, crouching, and crawling. 534 F. App'x 546, 551 (7th Cir. 2013) (citing *Golembiewski*, 322 F.3d at 917). Here, remand is required for the ALJ to resolve the conflict between the RFC finding that the Plaintiff can stoop up to one-third of the day and the contrary medical evidence, including Dr. Villarroel's examination findings regarding the Plaintiff's lumbar flexion and inability to stoop completely and Dr. Fink's opinion that the Plaintiff can never stoop. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) ("[T]he ALJ must build an accurate and logical bridge from the evidence to her conclusion." (internal quotation marks and citations omitted)); SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996) (explaining that an ability to stoop occasionally is required in most unskilled sedentary occupations and that "[a] *complete* inability to stoop would significantly erode the unskilled sedentary occupational base").

Second, remand is required for the ALJ to properly address in both the RFC and the hypothetical to the vocational expert the Plaintiff's difficulties in maintaining concentration, persistence, and pace. At steps two and three, the ALJ found that the Plaintiff's major depressive disorder is a severe impairment and that the Plaintiff has moderate limitations in maintaining concentration, persistence, and pace. AR 20–21. Then, in the mental RFC, the ALJ found that the

9

Plaintiff can understand, remember, and carry out simple instructions; make simple work-related decisions; sustain an ordinary routine without special supervision; and can tolerate occasional changes in the work setting. *Id.* at 22. The Plaintiff argues that this mental RFC addresses only the complexity of the tasks as opposed to the Plaintiff's ability to complete tasks in a competitive work environment over the course of an eight-hour work day, five days a week.

The Seventh Circuit has made it clear that a limitation in a hypothetical to "simple, routine, repetitive tasks" does not account for deficiencies in concentration, persistence, and pace. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019)); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619–20 (7th Cir. 2010). This is because a limitation to "simple, routine, repetitive tasks," which is a reference to "unskilled work," does not necessarily exclude from the vocational expert's consideration jobs that present significant problems of concentration, persistence, and pace. *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017). Unskilled work is defined as simple work that can be learned by demonstration in less than 30 days. 20 C.F.R. § 416.968(a). However, whether work can be learned over a certain period of time "is unrelated to the question of whether an individual with mental impairments— *e.g.,* with difficulties maintaining concentration, persistence, or pace—can perform such work." *Varga*, 794 F.3d at 814; *see also Lanigan*, 865 F.3d at 565–66; *Yurt*, 758 F.3d at 858–59.

Here, the Plaintiff notes that the records of his treating psychologist, Dr. Ramirez, consistently reported the Plaintiff's complaints of problems with concentration as well objective findings that the Plaintiff's concentration and attention are "a bit poor" and that the Plaintiff experienced auditory hallucinations. AR 295–96 (8/17/2017), 568–69 (11/6/2017), 571

(3/5/2018), 573 (8/16/2018), 575 (11/15/2018). In addition, the ALJ specifically found that the Plaintiff has moderate limitations in concentration, persistence, and pace. However, the ALJ does not discuss how these limitations are accounted for in the mental RFC.

In response, the Commissioner contends that the limitations in the mental RFC are supported by the opinions of state agency reviewing psychologists, Dr. Gange and Dr. Unversaw. *See* AR 68, 80. And, the Commissioner asserts that the ALJ "essentially accepted the findings of Drs. Gange and Unversaw but found the Plaintiff to be even more limited by problems with attention/concentration." Def. Br. 10 (citing AR 25). This argument is not supported by the record. The ALJ specifically found the opinions of Dr. Gange and Dr. Unversaw "not" persuasive because they found that the Plaintiff had no severe mental impairment, whereas the ALJ found that the Plaintiff has the severe impairment of major depressive disorder. AR 25 (citing Exs. B1A, B3A). In addition, Dr. Gange and Dr. Unversaw found that the Plaintiff had only a mild limitation in concentration, persistence, and pace in contrast with the ALJ who found a moderate limitation. *Compare id.* at 21, *with id.* at 68, 80. The doctors found a mild difficulty in understanding, remembering, or applying information, whereas the ALJ found a moderate limitation. *Compare id.* at 21, *with id.* at 68, 80. Finally, the doctors found no limitation in adapting or managing oneself, whereas the ALJ found a mild limitation. *Compare id.* at 21, *with id.* at 68, 80. Moreover, the only anlaysis of these opinions by the ALJ was finding them not persuasive because "the mental status examinations at Regional Mental Health Center warrant some mental health limits in the residual functional capacity due to a severe mental impairment." *Id.* at 25. Therefore, the opinion of Dr. Gange and Dr. Unversaw cannot provide support for an RFC based on the ALJ's finding of more restrictive limitations.

11

Finally, the Commissioner argues that the ALJ accommodated the Plaintiff's attention and concentration problems by limiting him to only "occasional" changes in the work setting. *Id.* at 25. But the ALJ does not provide such an explanation, and it is unclear how only occasional changes in the work setting account for difficulties in sustaining concentration, persistence, and pace over a workday and throughout a workweek. The Court recognizes that the ALJ noted that the Plaintiff received limited treatment at Regional Mental Health Center in 2017 and that the Plaintiff missed appointments. *Id.* at 25 (citing Exs. B1F, B12F). And although the ALJ states generally that "[t]he mental status examination findings are accounted for with the mental limits noted in the residual functional capacity," *id.* at 25, this explanation is insufficient in light of the Seventh Circuit precedent that the limitations such as those in this RFC are insufficient to account for moderate limitations in concentration, persistence, and pace without further explanation. Remand is required for a sufficient explanation by the ALJ of how the Plaintiff's moderate limitations in concentration, persistence, and pace are addressed by the mental RFC.

The Plaintiff makes several additional arguments related to the ALJ's articulation of the basis for the RFC after rejecting the opinion evidence, consideration of the Plaintiff's need to lie down during the day, evaluation of the Plaintiff's subjective complaints, and consideration of the opinion evidence. On remand, the ALJ will have an opportunity, if appropriate, to further address each issue. As to the opinion evidence, the Plaintiff is correct that the ALJ did not adopt any physician opinion evidence to determine the RFC with the exception of the state reviewing physicians' opinions on postural limitations. In some instances, an evidentiary deficit is created when an ALJ rejects all opinion evidence and the remainder of the record does not support the limitations in the RFC. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). However, an ALJ is not required to accept any one physician's opinion on a claimant's functional limitations

and may find an RFC that is more limiting than a medical opinion as long as the RFC is supported by substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (noting that the ALJ's RFC finding "was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence [the claimant] presented"); *Whitehead v. Saul*, 841 F. App'x 976, 982–83 (7th Cir. 2020) (quoting *Schmidt*, 496 F.3d at 845). On remand, should the ALJ again find an RFC for more limitations than assessed in the opinion evidence but less limitations than asserted by the Plaintiff, the ALJ will have an opportunity to specifically explain how the evidence of record supports the RFC.

As to the asserted need to lie down throughout the day, the Plaintiff cites his testimony that he lies down to watch TV during the day when his back aches, *see* AR 47, 55, and also that medication for his insomnia makes him drowsy for a few hours in the morning, *see* AR 45. On remand, if the Plaintiff asserts a need to lie down throughout the day because of pain and/or drowsiness, which is the Plaintiff's burden to prove, *see Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021), the ALJ will have an opportunity to address the Plaintiff's allegations and the evidence. Similarly, the ALJ will have an opportunity on remand to explain *which* of the Plaintiff's subjective complaints are not entirely credible and the evidentiary basis for the findings. *See Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018).

Last, as to the opinion evidence, the Plaintiff's arguments regarding the "weighing" of medical opinions and the "weight" given to "treating source medical opinions" reflect the prior standard that is no longer applicable to claims failed after March 27, 2017, as in this case. *See* 20 C.F.R. § 416.920c(c); *see also id.* § 416.920b. Under the new standard, no specific "weight" is given to opinion evidence. *See id.* § 416.920c(a). The most important factors are supportability and consistency, and the ALJ must explain how those two factors are considered in the decision.

*Id*. § 416.920c(b). The ALJ may, but is not required to, explain how the ALJ considered the remaining factors of the source's relationship with the claimant; specialization of the medical source; and nonmedical factors such as familiarity with the SSA's disability program. *Id.* In discounting the opinion evidence that the Plaintiff requires a cane, the ALJ properly considered the Plaintiff's own testimony that he does not regularly use a cane—analysis that the Plaintiff ignores in his briefs. *See* AR 26. And, the ALJ discussed inconsistent medical records since the date of the Plaintiff's surgery, including several normal findings. *See id.* at 13–25, 26 (citing *id.* at 414). However, the ALJ did not explain how the abnormal findings of lumbar tenderness, negative straight leg raises, and limited range of motion do not support the opinion evidence or why other normal findings make the opinion evidence less persuasive on the ability to do sedentary work. As for Dr. Gonzalez's opinion, the ALJ sufficiently explained why Dr. Gonzalez's finding of a "marked" limitation in concentration, persistence, and pace was not supported by the evidence of record, *see* AR 26, and the Plaintiff has not offered any evidence to show a limitation greater than the "moderate" limitation in concentration, persistence, and pace found by the ALJ.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 17] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on December 16, 2021.

                                         s/ Theresa L. Springmann
                                         JUDGE THERESA L. SPRINGMANN
                                         UNITED STATES DISTRICT COURT